# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.D., R.T., and L.T.**

**No. 20-0498** (Clay County 19-JA-17, 19-JA-18, and 19-JA-19)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother E.T., by counsel Andrew B. Chattin, appeals the Circuit Court of Clay County's May 5, 2020, order terminating her parental rights to R.D., R.T., and L.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Angela Alexander Walters, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period to correct the conditions of abuse and neglect.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed a child abuse and neglect petition against petitioner alleging, among other things, that she abused controlled substances, failed to financially support the children, failed to provide food and adequate housing, abandoned the children, and had previously been adjudicated as an abusing parent. The DHHR also alleged that Child Protective Services ("CPS") workers attempted to locate petitioner on at least eight different occasions to no avail. Thereafter, petitioner failed to appear at the preliminary hearing, and the circuit court

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

ratified the children's emergency removal.[2] That same month, petitioner filed a motion for an improvement period.

The circuit court held an adjudicatory hearing in September of 2019, wherein petitioner failed to appear but was represented by counsel. The DHHR presented evidence consistent with the petition, and the circuit court found that petitioner's drug addiction affected her ability to care for the children and provide them a fit and suitable home. In light of this finding, the circuit court adjudicated petitioner as an abusing parent.

The circuit court held a dispositional hearing in March of 2020. At the beginning of the hearing, petitioner's counsel moved for a continuance in light of the fact that he just met petitioner for the first time when she was transported to the hearing from the regional jail. The circuit court noted that petitioner was served by publication and denied the motion. The DHHR presented the testimony of a CPS worker, who stated that the DHHR had been trying to locate and serve petitioner with a copy of the underlying petition but had been unsuccessful. The worker visited petitioner's last known residence in October and December of 2019 but could not locate petitioner. The worker eventually found petitioner on the regional jail website, contacted the Central Regional Jail in January of 2020 and left a message for petitioner to call, but petitioner did not return her call. According to the worker, petitioner was, at the time of the hearing, incarcerated at the Tygart Valley Regional Jail and had been in and out of jail three or four times in the preceding months. Additionally, the worker testified that petitioner never contacted the DHHR to establish services. When asked whether petitioner was likely to comply with the terms and conditions of an improvement period, the worker answered "no." Finally, the worker testified that immediately prior to the hearing, petitioner attempted to escape from police custody by climbing into the ceiling of her holding cell.

Petitioner testified at the hearing and stated that R.D. had been living with his maternal aunt since May of 2019. When asked about her whereabouts during that time, petitioner answered that she lived "here and there." When asked about her attempted escape, petitioner could not give an explanation. Petitioner testified that she did not have a drug problem and that her relatives took her children from her, referring to the relative custodians of the children. Yet when questioned further, petitioner answered that she thought it was in R.D.'s best interest to remain in petitioner's sister's care, given that the child had lived there for most of his life. With regard to R.T. and L.T., petitioner testified that they had lived with her grandmother since 2018 when she gave her grandmother "temporary custody" of the children. Further, petitioner stated that she did not know about the instant proceedings against her but admitted that she "heard hearsay" about the case. She then claimed that she contacted the DHHR several times but never heard back. Finally, petitioner testified that she would be sentenced within a few weeks on an

---

[2]Petitioner was served with the petition by way of publication.

outstanding criminal charge of imposition of sexual acts on an incarcerated person and that she wished to participate in an improvement period.[3]

At the close of evidence, the circuit court found that petitioner failed to appear at prior court hearings, attempted to escape custody by "climbing into the ceiling of the courthouse while awaiting today's hearing," and was convicted of a felony in another county for which she failed to appear for sentencing. The circuit court noted that petitioner denied abusive and neglectful conduct, was previously adjudicated of such conduct, and continued to engage in the same abusive and neglectful conduct. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner now appeals the May 5, 2020, dispositional order terminating her parental rights to the children.[4]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[3]Petitioner was formerly an employee of the Division of Corrections and Rehabilitation. West Virginia Code § 61-8B-10(a) provides, in part:

Any person employed by the Division of Corrections and Rehabilitation, any person working at a correctional facility managed by the Commissioner of Corrections and Rehabilitation . . . who engages in sexual intercourse, sexual intrusion, or sexual contact with a person who is incarcerated in this state is guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000 or imprisoned in a state correctional facility for not less than one nor more than five years or both fined and imprisoned.

[4]R.D.'s father's parental rights were also terminated below, and the permanency plan for R.D. is adoption by his maternal aunt. The custodial rights of the father to R.T. and L.T. were terminated below and the permanency plan for those children is permanent guardianship with their maternal great-grandmother.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period to correct the conditions of abuse and neglect. According to petitioner, the circuit court should have permitted her to address her addiction issues through inpatient drug treatment. Petitioner contends that there was a reasonable likelihood that she would address the conditions of abuse and neglect if given the opportunity to participate in an improvement period. We disagree.

As this Court has recognized, a parent bears the burden of establishing that they are likely to fully comply with an improvement period in order to obtain one. *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the [parent] is likely to fully participate in the improvement period'"). Here, the record overwhelmingly establishes that petitioner failed to satisfy this burden, given her total failure to participate in any services offered and her failure to attend any hearings, other than the dispositional hearing, and multidisciplinary team meetings below. Although petitioner claims that she was unaware of the proceedings against her, the record shows that the DHHR consistently sought to locate and contact petitioner, since as early as June of 2019, and that she was served by way of publication. Furthermore, petitioner acknowledged that she "heard hearsay" about the case and was aware that her grandmother and sister had custody of the children. Accordingly, the circuit court found petitioner's testimony in this regard without credibility. We have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). In short, the record shows that petitioner entirely abdicated all responsibility to participate in the proceedings below, and we find that her unsupported assertion that she was likely to address the conditions of abuse and neglect was insufficient to satisfy the burden of proof necessary for obtaining an improvement period. Because petitioner failed to satisfy this burden, we find no abuse of discretion in the circuit court's denial of her motion for an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Further, we find no error in the circuit court's termination of petitioner's parental rights. According to petitioner, termination was in error because the circuit court should have imposed a less-restrictive dispositional alternative by allowing her to enroll into inpatient drug treatment. However, petitioner denied having a drug problem at the dispositional hearing and, therefore, believed that she did not need drug treatment, inpatient or otherwise. Upon reviewing the record, we find that the circuit court made the appropriate findings necessary for termination under West Virginia Code § 49-4-604(c)(6). Specifically, the circuit court found that there was no reasonable

likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future, based in part, upon her failure to participate in the proceedings or otherwise correct the conditions of abuse and neglect. This is a situation in which there is no reasonable likelihood that a parent can correct such conditions. W. Va. Code § 49-4-604(d)(3) (Providing that no reasonable likelihood the conditions of abuse and neglect can be substantially corrected exists when the parent has "not responded to or followed through with a reasonable family case plan."). Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, the circuit court's May 5, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison